UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 05-60149-CR-COHN/TORRES



UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL McKAY, and ROBERT McKAY,

    Defendants.
_____/

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING FORFEITURE**

**THIS CAUSE** is before the Court upon the Government's motion for an order of forfeiture based on the evidence of record and the jury's verdict in the above-captioned action. The Court has carefully considered the Motion, the Government's Bench Memorandum Regarding Forfeiture [DE 215], Defendant Michael McKay's Response [DE 245], Defendant Robert McKay's Response [DE 246], the Government's Reply [DE 250], evidence presented during the non-jury forfeiture trial held on January 29, 2007, the underlying record in this case, and is otherwise fully advised in the premises.

### I. BACKGROUND

Defendants Michael McKay and Robert McKay were elected officers of the American Maritime Officers Union ("AMO Union"), a labor organization that represents licensed officers serving in the United States flag merchant fleet. Both Defendants were indicted and charged with racketeering conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1962 (Count One) and Mail Fraud in violation of 18 U.S.C. § 1341 (Counts Four and

Nine). Additionally, Michael McKay was charged with Theft or Embezzlement from Employee Benefit Plan in violation of 18 U.S.C. § 664 (Count Two) and Mail Fraud in violation of 18 U.S.C. § 1341 (Count Ten), and Robert McKay was charged with Embezzlement from a Labor Organization in violation of 29 U.S.C. § 501(c) (Count Eight).[1] A jury found the Defendants guilty on all counts except Count Two. Pursuant to the notice provided in the Second Superseding Indictment [DE 13], the Government has moved for forfeiture under 18 U.S.C. §§ 1963 and 981(a)(1)(C) and 29 U.S.C. § 2461. The Government is seeking money judgments against the Defendants for the RICO, mail fraud, and embezzlement convictions. Defendants waived their right to a jury trial on the issue of forfeiture.

## II. ANALYSIS

### A. Forfeiture Standard

Since the Defendants were found guilty of Count One of the Second Superseding Indictment, the Government is seeking forfeiture of all property subject to RICO forfeiture. Title 18 U.S.C. § 1963(a) provides, in relevant part, that a person found guilty of violating 18 U.S.C. § 1962 shall forfeit to the United States:

> (1) any interest the person has acquired or maintained in violation of section 1962;

---

[1] Defendants were also charged with and adjudged guilty of Falsification of Records and Certified Information Pertaining to Employee Benefit Plan in violation of 18 U.S.C. § 1027 (Count Eleven charging Michael McKay only), Failure to Maintain Records as Required by the Labor Management Reporting and Disclosure Act ("LMRDA") in violation of 29 U.S.C. §§ 436 and 439(a) (Count Twelve), and False Entry in Records as Required by the LMRDA in violation of 29 U.S.C. §§ 436 and 439(a) (Count Thirteen charging Robert McKay only). As those counts do not pertain to the instant findings regarding forfeiture, they will not be addressed herein.

        (2) any -
             (A) interest in;
             (B) security of;
             (C) claim against; or
             (D) property or contractual right of any kind affording a source of influence over;

        any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

        (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

        The court, in imposing sentence on such person shall order, in addition to any other sentence imposed pursuant to this section, that the person forfeit to the United States all property described in this subsection.

Since the Defendants were also found guilty of Counts Four, Eight, Nine and Ten of the Second Superseding Indictment, the Government is seeking an order of forfeiture as to those counts under 18 U.S.C. § 981(a)(1)(C). Section 981(a)(1)(C) provides for the forfeiture of: "Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." Section 1956(c)(7)(A) defines "specified unlawful activity" as "any act or activity constituting an offense listed in section 1961(1) of this title," and § 1961(1) contains a long list of offenses which are considered "racketeering activity" including 18 U.S.C. § 1341 and 29 U.S.C. § 501(c), the statutes under which Defendants were convicted.

The parties dispute whether the Government's burden of proof is beyond a reasonable doubt or preponderance of the evidence. While the Eleventh Circuit has

expressly held that the burden of proof in forfeiture actions related to the crimes of mail fraud and embezzlement is preponderance of the evidence, it has not squarely addressed whether forfeiture under § 1963 is governed by a preponderance or reasonable doubt standard.  Compare United States v. Hasson, 333 F.3d 1264, 1277-79 (11th Cir. 2003) (holding preponderance standard applies to forfeiture under criminal forfeiture provision 18 U.S.C. § 982)[2] with United States v. Goldin Indus., Inc., 219 F.3d 1271, 1278 n.10 (11th Cir. 2000) (declined to decide burden of proof issue "as the convictions stand even under the higher burden of proof").  In this case, as in Goldin, this Court's findings regarding forfeiture survive even under the higher standard. Therefore, the Court need not reach the issue of whether the elements of forfeiture under § 1963 must be proven by a preponderance of the evidence or beyond a reasonable doubt.

### B. Forfeitable Proceeds

The Government does not seek direct forfeiture of specific assets but moves for money judgments against the Defendants for proceeds generated by the Defendants during and as a result of their acts of racketeering, mail fraud and embezzlement.  The Government asks the Court to adjudge forfeiture in the amount of $2,800,617.71 as to Count One, $28,728.69 as to Count Four, $2,815.35 as to Count Eight for Robert McKay only, $2,611.64 as to Count Nine, and $12,000.00 as to Count Ten for Michael McKay only.  Defendants concede that the Government is entitled to recover some of

---

[2] See United States v. Croce, 2006 WL 3779752, at *4 (3d Cir. Dec. 22, 2006) (explaining how § 982 and § 981 both authorize criminal forfeiture for mail fraud and embezzlement crimes even though § 981 is titled civil forfeiture); United States v. Schlesigner, 396 F. Supp. 2d 267, 275-76 (E.D.N.Y. 2005) (same).

the monies sought. However, Defendants dispute the amount sought by the Government alleging that 1) the Government should not be entitled to more than the $528,098.00 specified in the Second Superseding Indictment because Defendants did not receive proper notice of the additional sums sought; 2) the Government should be prevented from double counting proceeds; 3) some of the line items sought by the Government including Defendants' salaries were not proceeds derived by the Defendants or are items that Defendants did not keep in their control; and 4) the entry of judgment as requested by the Government would be disproportionate to the crime.

As a preliminary matter, the Court shall address Defendants' various arguments. First, the Court finds that Defendants received sufficient notice of the United States' intent to pursue forfeiture. Pursuant to the Federal Rules of Criminal Procedure 7(c)(2) and 32.2(a), the Government need only provide notice that it intends to seek forfeiture under the applicable statute. The Government is not required to provide a list of the property sought or the exact amount of the Defendants' interest in the property. See United States v. DeFries, 129 F.3d 1293, 1315 n.17 (D.C. Cir. 1997); United States v. Dolney, No. 04-CR-159, 2005 WL 1076269, at *9 (May 3, 2005 E.D.N.Y.); United States v. Iacaboni, 221 F. Supp. 2d 104, 110-11 (D. Mass. 2002), aff'd in part 363 F.3d 1 (1st Cir. 2004) (reversing in part on other grounds).

Second, as discussed further below, the Court concurs that double counting of proceeds is prohibited in calculating the amount to be forfeited. The Court has conducted a detailed review of the Government's requests and has cautiously avoided double forfeiture.

As to Defendant's third argument, the Court has denied the Government's

5

request insofar as it seeks proceeds that the Court finds do not derive from the charges for which Defendants were convicted. However, unless otherwise stated, the Court has not reduced the amount by monies no longer within the Defendants' possession. As noted by the Government, while the Seventh Circuit states that only those assets currently in a criminal defendant's possession are forfeitable, the Court herein follows the majority of circuits which hold that forfeiture shall be ordered for the full amount of illegal proceeds irrespective of whether monies are in the defendant's possession at the time the court makes findings regarding forfeiture. See United States v. Vampire Nation, 451 F.3d 189, 201-02 (3d Cir. 2006) ("Given that § 853 does not contain any language limiting the amount of money available in a forfeiture order to the value of the assets a defendant possesses at the time the order is issued, we think it clear that *in personam* forfeiture judgment may be entered for the full amount of the criminal proceeds"); United States v. Huber, 404 F.3d 1047, 1058-59 (8th Cir. 2005) (legitimate expenses incurred in acquiring forfeitable funds not deducted from amount to be forfeited even though the money expended is no longer in the defendant's possession); United States v. Boulware, 384 F.3d 794, 813 (9th Cir. 2004) (defendant must forfeit gross amount of fraudulently obtained loan without any set-off for amount already repaid); United States v. Simmons, 154 F.3d 765, 770 (8th Cir. 1998) (proceeds defined as gross receipts without regard to costs associated with obtaining the receipts); United States v. DeFries, 129 F.3d 1293, 1313-14 (D.C. Cir. 1997) (same); United States v. Hurley, 63 F.3d 1, 21 (1st Cir. 1995) (citing legislative history to establish that Congress intended to "alleviate the unreasonable burden on the government of proving net profits"). But see United States v. Masters, 924 F.2d 1362, 1369-70 (7th Cir. 1991)

(defining proceeds as net profit) cited by United States v. Genova, 333 F.3d 750, 761 (7th Cir. 2003). Therefore, the Court shall order forfeiture of all proceeds obtained as a result of Defendants' criminal actions regardless of whether the proceeds are currently within Defendants' possession or control.

Finally, the Court finds that ordering a money judgment for the exact amount of proceeds of the offenses is not excessive or disproportionate to the crimes for which Defendants were convicted. See United States v. Betancourt, 422 F.3d 240, 250-51 (5th Cir. 2005) (citing and adopting holding of various other circuits that excessive fines clause of Eight Amendment does not apply to forfeiture of drug transaction proceeds); United States v. DeFries, 909 F. Supp. 13, 15 (D.D.C. 1995) ("The Court has no discretion to withhold forfeiture or adjust the amount; its function is merely to ascertain if the requisite nexus exists between a property interest sought to be forfeited and the substantive § 1962 violations"), rev'd on other grounds United States v. DeFries, 129 F.3d 1293 (D.C. Cir. 1997). But see United States v. Corrado, 227 F.3d 543, 552 (8th Cir. 2000) (courts can reduce forfeiture so as not to violate the Eighth Amendment). As such, the Court will not reduce the amount of the judgment which is calculated to reflect the amount of net proceeds obtained as a result of Defendants' actions.

The Court shall now address the forfeitability of the specific proceeds sought by the Government in this case.

### 1. Salaries

The Government seeks forfeiture of Michael McKay's salary from January 1, 1994 to December 12, 2001 in the amount of $1,492,531.00 and Robert McKay's salary from January 1, 1997 to December 31, 2001 in the amount of $778,620.00. Relying on

United States v. DeFries, 129 F.3d 1292, 1312-13 (D.C. Cir. 1997), the Government argues that the salaries are forfeitable because the Defendants participated in election fraud and ballot tampering. In order to prove the forfeitability of the Defendants' salaries, the Government is not required to prove that the election results would have been different "but for" the election fraud. Id. Placing that burden on the Government would present an impossible task whereby the Government would be required to evaluate each ballot and determine whether the vote cast would have been different absent the fraud. This burden would be inconsistent with the well-settled principle requiring courts to liberally construe RICO forfeiture provisions. Id. Therefore, to prove the forfeitability of the Defendants' salaries, the Government need only show that the elections were "systemically tainted with fraud, and the victors bear responsibility for that fraud." DeFries, 909 F. Supp. at 18.

In this case, the Court finds that Defendant Michael McKay's salary is subject to forfeiture. The jury found that Michael McKay was elected President of the AMO Union in the 1993 and 1996 elections after he engaged in systematic ballot tampering and election fraud. Therefore, the salary earned by Michael McKay as the Union's President from January 1, 1994 to December 12, 2001 in the amount of $1,492,531.00 shall be forfeited to the Government.

On the other hand, the evidence against Defendant Robert McKay is substantially different. Robert McKay was elected Secretary/Treasurer of the AMO Union in the 1993 and 1996 elections. Although these elections were fraught with scandal caused by Defendant Michael McKay and others, there was no evidence that Robert McKay bore any responsibility for the election fraud. To the contrary, Robert

McKay was adjudicated not guilty by the Court of the predicate acts involving the theft of ballots and honest services fraud in the 1993 and 1996 elections. A finding that Robert McKay now bears responsibility for the election fraud such that his salary is forfeitable would subvert the interests of justice and implicate his right against double jeopardy under the Fifth Amendment. Therefore, the Court finds that the salary earned by Robert McKay from January 1, 1997 to December 31, 2001 in the amount of $778,620.00 is not subject to forfeiture.

## 2. Other Proceeds

In addition to the Defendants' salaries, the Government moves for forfeiture of all monies and in-kind services expended or provided by the AMO Union and AMO employee benefit plans ("AMO Plans") in furtherance of Defendants' criminal actions. Specifically, the Government seeks forfeiture of the cost to the AMO Plans for providing housing at no charge to Defendant Robert McKay and his family, Susan Pallandino, an AMO Union employee, and other designated AMO Union officials and guests. The Government also requests forfeiture for the amount of inflated invoices paid by the Plans to vendors and bonuses issued by the AMO Plans to AMO employees and officials. These payments were made for the purpose of reimbursing the vendors and employees for political contributions made to various candidates upon Defendants' directives. Finally, the Government seeks forfeiture of certain AMO expenses such as for the purchase of AMO 50th Anniversary china, Florida Panther Hockey Tickets, cigars, and payments made because of inflated or false receipts submitted for meals reimbursement by Defendant Robert McKay.

The Court finds that all of the remaining proceeds discussed above bear a

sufficient nexus to the crimes committed by the Defendants. However, not all of the items sought are forfeitable. First, the Court finds that the value of the housing provided by the AMO Plans to Robert McKay and his family is not forfeitable. During trial, it was established that upon learning of the investigation in this matter, Robert McKay paid the plans for the full value of all housing received. Although reimbursement does not absolve him of criminal liability, he has satisfied his restitution obligation for the use of the Plans' housing in the amount of $12,597.00. Therefore, this amount is not subject to forfeiture since Robert McKay disgorged himself of the ill-gotten gain and the AMO Plans have been made whole.

The Court also holds that the amount of some of the housing provided at no charge to Susan Pallandino, Michael McKay's secretary, is not subject to forfeiture. The Government requests forfeiture for this housing in the amount of $62,829.50. This amount represents housing provided to Ms. Pallandino from the years 1992 to 2000. Since the Second Superseding Indictment charges that the conspiracy began in December 1993, the Court finds that Defendants cannot be ordered to forfeit the cost of the housing provided to Ms. Pallandino prior to December 1993. A review of the evidence indicates that Ms. Pallandino incurred $3,000.00 in housing expenses during 1992 ($250.00/month for 12 months) and $4,125.00 from January 1993 through November 1993 ($375.00/month for 11 months) [Govt's Exh. 169 & 170]. Therefore, $7,125.00 shall be deducted from the $62,829.50 for a total amount subject to forfeiture for the housing of Ms. Pallandino of $55,704.50.

After a detailed review of the other proceeds requested by the Government, the relevant exhibits, and evidence introduced during trial, the Court finds that the

remaining funds are forfeitable to the Government. Based on the foregoing, in addition to Michael McKay's salary discussed above, the Government is entitled to the forfeiture of the following amounts for each relevant count:

- Count One: $ 509,744.71
- Count Four: $28,728.69
- Count Eight (as to Robert McKay only): $2,815.35
- Count Nine: $2,611.64
- Count Ten (as to Michael McKay only): $12,000.00

Although the Government is entitled to forfeiture of these amounts, it is not entitled to double count the proceeds for purposes of recovery. As a practical matter, since the amounts forfeitable for the crimes charged in Counts Four, Eight, Nine and Ten are also sought for the RICO charge in Count One, the Court will provide a set-off for the amounts forfeitable under Counts Four, Eight, Nine and Ten. Therefore, the Government is entitled to forfeiture of Michael McKay's salary in the amount of $1,492,531.00 plus $509,744.71 in other proceeds for a total judgment of $2,002,275.71.

### C. Joint and Several Liability

Codefendants are jointly and severally liable for the proceeds of a RICO enterprise. Simmons, 154 F.3d at 769; United States v. White, 116 F.3d 948, 951 (1st Cir. 1997) (listing cases holding joint and several liability should be applied in the context of criminal forfeiture). As held by the Eleventh Circuit, "the government is not required to trace racketeering proceeds to specific assets before imposing forfeiture." United States v. Caporale, 806 F.2d 1487, 1508 (11th Cir. 1986). However, where it is clear that a specific defendant had no part in or knowledge of the procurement of a given piece of forfeitable property, that defendant can be immune from vicarious liability

for that amount. DeFries, 909 F. Supp. at 20 ("the defendants . . . shall have no vicarious forfeiture liability for the co-defendants' severance payments in any amount since neither had a hand in bestowing, or even became aware of them, until after the event"). In determining joint and several liability in forfeiture proceedings, courts look to whether the procurement of the funds subject to forfeiture was reasonably foreseeable to each member of the conspiracy. Hurley, 63 F.3d at 22 (citing Pinkerton v. United States, 328 U.S. 640 (1946). As noted by the First Circuit, members of a RICO conspiracy must be held vicariously liable for "laundered funds obtained by other members of the conspiracy . . . only to the extent that they were reasonably foreseeable to the particular defendant." Id.

In this case, as discussed above, Defendant Robert McKay was adjudged not guilty of the predicate acts involving illegal ballot tampering and honest services fraud in the 1993 and 1996 elections. It follows, therefore, that the proceeds of that crime subject to forfeiture, namely Michael McKay's salary, are clearly differentiated from the proceeds of the remaining crimes for which Robert McKay was adjudged guilty. There is no evidence that Robert McKay took any part in tampering with the ballots which resulted in Michael McKay's election and subsequent salary. While there was some evidence at trial that Robert McKay was present at meetings where election fraud was discussed, regardless of which burden of proof attaches to the forfeiture proceeding, mere presence is insufficient to establish knowledge much less foreseeability that the Union election would be rigged. It would therefore defy reason and result in a miscarriage of justice to now find Robert McKay jointly and severally liable for Michael McKay's salary merely because Robert McKay was found guilty of other unrelated

predicate acts supporting his conviction of Count One. As to the other proceeds for which Robert McKay claims he had no knowledge, specifically the purchase of cigars, Panther hockey tickets and anniversary china, and maintenance of Michael McKay's dive boats, the Court finds that the guilty verdicts for Counts One, Four, Eight and Nine encompass predicate acts such that the use of these funds was reasonably foreseeable by Robert McKay. Consequently, the Court applies joint and several liability for all forfeitable amounts except Robert McKay shall not be held vicariously liable for the forfeiture of Michael McKay's salary in the amount of $1,492,531.00.

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Government's motion for an order of forfeiture based on the evidence of record and the jury's verdict as to Counts One, Four, Eight, Nine and Ten is **GRANTED**, with separate orders of forfeiture to be entered against each Defendant.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida on this 13th day of March 2007.

JAMES I. COHN
UNITED STATES DISTRICT JUDGE

Copies to:
All counsel of record